# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DAVID R. SIERRA,

    Plaintiff,

vs.                                                                       Civ. No. 96-1134 JP/WWD

SHIRLEY S. CHATER, Commissioner
of HEALTH AND HUMAN Services,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 27, 1998 [18-1]. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff was forty-eight years old at the time of the hearing and alleges a disability as of January 25, 1992, due to head injuries and right upper extremity problems. Mr. Sierra has sixth grade Cuban education. He speaks and understands very little English. Plaintiff worked in the past as an upholsterer and bus operator.

    2. Following an initial hearing on May 25, 1993, Plaintiff was determined by the Administrative Law Judge ("ALJ") to be not disabled. Plaintiff appealed that decision, and the Appeals Council remanded the case for further consideration and to obtain vocational expert testimony.

    3. Following a subsequent hearing (the one underlying the ALJ's decision here), Plaintiff was also found not to be disabled in a decision dated March 22, 1995. The ALJ concluded that

there were a significant number of jobs in the light range level of work which Mr. Sierra could perform. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff contends that the ALJ's finding that he can perform a significant number of jobs in the range of light work was not based on substantial evidence.

6. In January, 1992, Mr. Sierra was assaulted and suffered a skull fracture which involved a subdural hematoma and resulted in mild dementia. In April 1992 a craniotomy was performed. Tr. at 125-30. In 1987, Plaintiff sustained a tear to his right biceps muscle while lifting and throwing cables. He complains of gripping difficulties and weakness with the third and fourth fingers of his right hand as a result.

7. At the hearing, Mr. Sierra told the ALJ that he has sought work, but employers are reluctant to hire him because of the condition of his arm and fingers and the head injury he had, and are afraid of being sued.[1] Tr. at 265. He said that he felt that he could do furniture upholstery work, except that he is afraid of getting his two weak fingers caught in the sewing machine. Tr. at 278.

---

[1] Plaintiff was represented at the hearing by an attorney from Southern New Mexico Legal Services. Tr. at 260. An interpreter was also present at the hearing.

8. Plaintiff helps out at home with light housework such as vacuuming and laundry, and helps his wife with the shopping. Tr. at 271-72. He also occupies his time with doing clean-up work in the yard and repairing small appliances. Tr. at 72. Mr. Sierra told the ALJ that he can lift 25 pounds, and walk three blocks, but gets dizzy when he walks. He prefers to sit throughout the day, since he can sit for five hours, but stand for only two. Id. He takes Nitrostat when needed, and is on blood pressure medication. Tr. at 200, 269.

**Relevant Medical History**

9. While in the hospital for the craniotomy in April 1992, Plaintiff was referred to Dr. Mohinder Mital to evaluate problems associated with his right upper extremity. Tr. at 130-31. The rupture of the right biceps muscle tissue left Plaintiff unable to fully flex his fourth and fifth fingers and made it difficult to grasp with the right hand. Dr. Mital suggested no heavy lifting, but doubted that the problem left Plaintiff disabled on this account "except for mild weakness." Tr. at 131.

10. Lawrence Burciaga, Ph.D. conducted neuropsychological testing in April 1993 which provides some insight into Mr. Sierra's neurological sequelae. Tr. at 144. It was noted that Plaintiff had some difficulty expressing thoughts verbally, but that he had a "superior" range of intelligence. Tr. at 148. Dr. Burciaga concluded that there was "evidence of organicity" and "severe damage" to several portions of the motor and parietal regions of his brain. He found Plaintiff's "primary vocational handicap" to be a lack of English skills, and suggested that vocations be limited to those which minimize his "language handicap." Tr. at 149-50.

11. In August 1993, Plaintiff was examined for his chest pain by Dr. S.F. Webb. The pain was diagnosed as a possible myocardial infarction, and also with probable emphysema linked

3

to a history of heavy smoking. Tr. at 203. Dr. Webb suggested that at the time, Plaintiff had a "limited ability to embark on a meaningful career." Tr. at 203. Dr. Webb instructed Plaintiff that the "most important thing he can do to relieve chest and pulmonary symptoms" was to stop smoking. Tr. at 204.

12. A medical consult done by Walter Trafton, M.D. in June 1993 stated that he felt employment should be restricted to "that not requiring a strong [right] shoulder or full flexion of the [left] hand or unimpaired hand/eye coordination or memory." Tr. at 215. An earlier consult by Dr. Trafton from August 1992 found that Mr. Sierra could lift not more than 25 pounds occasionally, that his right side grip had a 70% strength and there was some weakness of flexion in Plaintiff's right elbow and shoulder. Tr. at 134. The doctor also noted some post-traumatic encephalitis with impairment of 13. central and peripheral coordination. Tr. at 137.

13. Following remand by the Appeals Council, Dr. George DeDonna examined Plaintiff in July 1994 and opined that his chest pain was angina pectoris and that his balance and equilibrium problems could be associated with his cardiovascular impairment. The doctor noted that Plaintiff had decreased his smoking from three packs a day to ten cigarettes a day. Tr. at 189. He also noted that a single nitroglycerin (Nitrostat) tablet relieved Plaintiff's chest pain symptoms.

14. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b). This category includes some jobs which involves sitting most of the time, but relatively few unskilled and semiskilled jobs are performed in a seated position. SSR 83-10.

15. Dr. DeDonna's residual functional capacity test indicated that Mr. Sierra could sit, stand and walk without difficulty, although Plaintiff had some imbalance due to his head injury. Without further tests, however, the doctor could not make a determination as to whether Plaintiff's heart disease precluded employment, except to state that "stressful" or "strenuous" activity would exacerbate his anginal pattern. Tr. at 190, 192. Nevertheless, he found that Mr. Sierra's ability to stand, walk or sit were not affected by his impairments.

16. The ALJ followed the proper legal standard in considering Mr. Sierra's medical history as well as his symptoms. In his written decision, the ALJ considered the findings from all of the medical reports. Tr. at 16-17. He looked at Plaintiff's medical history; medical signs and laboratory findings; effects of treatment, including limitations or restrictions imposed; daily activities; recorded observations; medical source statements and effects of symptoms. SSR 96-8p; 20 C.F.R. § 404.1545. The ALJ also evaluated Plaintiff's symptoms in light of their consistency with the objective medical evidence and other evidence, which was the correct legal standard. 20 C.F.R. § 416.929.

17. Plaintiff's various alleged nonexertional impairments, e.g., need to alternate positions, would have precluded the ALJ from relying on the grids. See Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984); 20 C.F.R. Pt.404, Subpt.P, App. 2, § 200(e)(1),(2) (grids consider only impairments that result in exertional or strength limitations and may not be fully applicable where other, nonexertional impairments are present). In this case, however, the ALJ (on remand) enlisted the services of a vocational expert before determining whether a step five finding of nondisability was warranted, i.e., whether there were a significant number of jobs in the national economy which Plaintiff could still perform.

5

**Vocation Expert Testimony**

18. The hypothetical given the vocational expert ("VE") was layered several times so that it took into account all of Plaintiff's impairments which were adequately supported in the record. See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993): mild dementia; poor balance, especially on turning; ability to lift not more than 25 pounds; need to alternate sitting and standing; walking limited to three blocks; and inability to perform tasks requiring fine manual dexterity. The latter hypothetical was specifically related to Mr. Sierra's problems with the use of his right fourth and fifth fingers.

19. Based on these hypotheticals, the VE opined that Plaintiff could do certain jobs, dry cleaner spotter and quality control inspector, at the light level of exertion. These jobs together existed in the hundreds of thousands nationally and over 850 regionally. Tr. at 286.[2]

20. Unfortunately for Plaintiff, his position that he had sought work unsuccessfully does not enter as a factor which taints the ALJ's findings. Local hiring practices, employer preferences for physically whole workers, and the claimant's actual chances of being hired are irrelevant considerations. See Lopez v. Sec. HEW, 512 F.2d 1155 (1st Cir.1975); 20 C.F.R. §§ 404.1566; 416.966.

21. In sum, I find that the ALJ's finding that Mr. Sierra can perform a significant number of jobs in the range of light work was based on substantial evidence.

**Recommendation**

---

[2] The VE stated that there were "100-plus" positions of dry cleaner spotter regionally, and "hundreds of thousands" nationally. Quality control inspector jobs existed on the regional level at about 750, and on the national level again in the hundreds of thousands. Tr. at 286.

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[18-1]** be denied and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE